```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS
_____
                                   )
A.Z.,                              )
                                   )
            Plaintiff,             )
                                   )
                                   )
v.                                 )    Civil Action
                                   )    No. 18-10511-PBS
KIRSTJEN M. NIELSON, as Secretary  )
of the Department of Homeland      )
Security; LEE FRANCIS CISSNA, as   )
Director of the U.S. Citizenship   )
& Immigration Services; JENNIFER   )
B. HIGGINS, as USCIS Associate     )
Director of Refugee, Asylum &      )
International Operations,          )
                                   )
            Defendants.            )
_____)
```

## MEMORANDUM AND ORDER

October 23, 2018

Saris, C.J.

### INTRODUCTION

Plaintiff brings this complaint for a writ of mandamus and declaratory judgment alleging that agency officials violated the Administrative Procedure Act (APA), 5 U.S.C. § 701 et seq., during her asylum interview when she was designated a "no show" after refusing to answer questions per counsel's instruction. Plaintiff seeks a preliminary injunction ordering the Government not to place her in removal proceedings and to remove the no-

1

show designation in her asylum application file (Docket No. 10). She argues she needs this relief to "keep the days counting" toward her eligibility for employment authorization. The Government has moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) for lack of jurisdiction and failure to state a claim.

After a hearing, the Court **ALLOWS** the Government's motion to dismiss (Docket No. 20).

**LEGAL BACKGROUND**

I. **Asylum Application Procedures**

An alien physically present in the United States may apply for asylum. 8 U.S.C. § 1158(a)(1). An asylum application must be filed within one year of an alien's arrival in the United States. Id. § 1158(a)(2)(B). Even if an alien misses the one-year deadline, U.S. Citizenship and Immigration Services (USCIS), which adjudicates asylum applications, may still consider the application if the alien demonstrates either "changed circumstances which materially affect [her] eligibility for asylum or extraordinary circumstances relating to the delay in filing an application." Id. § 1158(a)(2)(D).

Once an asylum seeker has filed an application, an initial interview must occur within 45 days, barring exceptional circumstances. Id. § 1158(d)(5)(A)(ii). If an applicant fails to appear for her interview, USCIS sends her a warning letter

directing her to explain her absence within 45 days. USCIS, Affirmative Asylum Procedures Manual § III.I (2013) ("AAPM" or "the Manual"). USCIS does not take any further action on the application until the 45 days have passed. Id. § III.I(2). USCIS treats a response within the 45-day period as a request to reschedule the interview, which it grants if the applicant demonstrates good cause for her failure to appear. Id.; see also 8 C.F.R. § 208.10 (requiring the applicant to demonstrate "exceptional circumstances" to excuse her failure to appear). If the applicant does not respond or provides an insufficient explanation for her failure to appear, she is "deemed to have waived his or her right to an interview or adjudication by an asylum officer." 8 C.F.R. § 208.14(c). When the applicant appears inadmissible or deportable, "the asylum officer *shall* refer the application to an immigration judge . . . for adjudication in removal proceedings." 8 C.F.R. § 208.14(c)(1) (emphasis added); accord AAPM § III.I(2)(a)(ii). In immigration court, the applicant may seek dismissal of her removal proceedings by demonstrating exceptional circumstances for missing the interview. AAPM § III.I(2)(b)(iii).

Asylum applicants may be represented at the interview by counsel. 8 U.S.C. § 1158(d)(4). The regulations governing the procedures for the interview before an asylum officer state:

> (b) The asylum officer shall conduct the interview in a nonadversarial manner and, except at the request of the applicant, separate and apart from the general public. The purpose of the interview shall be to elicit all relevant and useful information bearing on the applicant's eligibility for asylum. At the time of the interview, the applicant must provide complete information regarding his or her identity, including name, date and place of birth, and nationality, and may be required to register this identity. The applicant may have counsel or a representative present, may present witnesses, and may submit affidavits of witnesses and other evidence.
>
> (c) The asylum officer shall have authority to administer oaths, verify the identity of the applicant (including through the use of electronic means), verify the identity of any interpreter, present and receive evidence, and question the applicant and any witnesses.
>
> (d) Upon completion of the interview, the applicant or the applicant's representative shall have an opportunity to make a statement or comment on the evidence presented. The asylum officer may, in his or her discretion, limit the length of such statement or comment and may require its submission in writing . . . .

8 C.F.R. § 208.9. The parties do not point to any provision in the statute, regulations, or Manual governing the refusal of an asylum applicant to answer questions during the interview upon advice of counsel.

## II. Employment Authorization

An applicant for asylum is eligible to receive an employment authorization document (EAD) 180 days after submitting a complete asylum application, as long as the application has not yet been denied. 8 C.F.R. § 208.7(a)(1). Any

delay in processing the application that is "requested or caused by the applicant" stops the 180-day clock and ends her eligibility for employment authorization. Id. § 208.7(a)(2); accord AAPM § III.F(3). For example, an applicant who fails to appear for a scheduled interview before an asylum officer is ineligible for employment authorization, unless she demonstrates good cause for her failure to appear within the 45-day period described above. AAPM § III.I(2)(b). USCIS treats the suspension of an interview due to failure of the applicant's attorney to abide by the rules as the fault of the applicant, thus stopping the EAD clock. Id. § II.J(5)(e) (abuse of a representative's role). The Manual states:

> It is the AO's [Asylum Officer's] duty to ensure that the representative follows the rules of the interview as explained at the outset of the interview, which includes turning off all cellular phones or beepers.
>
> With concurrence of an SAO [Supervisory Asylum Officer], an AO [Asylum Officer] may ask a representative who continuously fails to abide by the rules after repeated warnings, to leave the interview. If the attorney is asked to leave, the AO either continues with the interview or suspends the interview at the applicant's request. If the interview is suspended, the rescheduling of the appointment is at the fault of the applicant, so the EAD clock stops. The AO must clearly outline in the interview notes what occurred during the interview that prompted the representative's dismissal from the AO's office. An AO must consult with an SAO prior to dismissing an attorney from an interview.

Id. A stopped EAD clock will resume only if the immigration court dismisses the applicant's removal proceedings upon a

showing of exceptional circumstances. AAPM § III.I(2)(b), III.I(2)(b)(iii).

**FACTUAL BACKGROUND**

The complaint alleges the following facts, some of which are disputed.[1] Plaintiff filed her Form I-589 Application for Asylum with USCIS on December 27, 2017. She attended her interview with her attorney on March 14, 2018. During the interview, the asylum officer told her that her attorney could not instruct her on whether to answer questions requesting more information about her asylum eligibility. The officer then asked Plaintiff to explain how and when she retained her attorney. She refused to respond to this question, and the asylum officer informed her that she would be designated a no show in USCIS's computer system. Because of this designation, Plaintiff's EAD clock stopped running, preventing her from receiving employment authorization.

---

[1] In support of its motion to dismiss, the Government has submitted an affidavit from Rachael Schupp-Star, a Supervisory Asylum Officer in the Boston Asylum Sub-Office at USCIS, explaining the Government's perspective on what occurred during the interview and disputing much of Plaintiff's account. According to Ms. Schupp-Star, Plaintiff was asked why she filed for asylum more than ten years after her date of entry, and her attorney refused to allow her to answer. She also contends the attorney was verbally abusive to the asylum officer. Plaintiff's attorney strongly denies these allegations. The Government has also submitted an affidavit from Meghann Boyle, the Director of the Boston Asylum Sub-Office at USCIS, that explains the affirmative asylum and employment authorization application process.

6

**DISCUSSION**

Plaintiff brings this lawsuit to challenge her no-show designation and request a new interview. The Government has moved to dismiss pursuant to Rule 12(b)(1) and Rule 12(b)(6). In a multi-pronged attack, the Government argues that (1) Plaintiff failed to exhaust administrative remedies; (2) if Plaintiff fails to provide good cause for her request to reschedule her interview and USCIS refers her case to immigration court, the Court would lack jurisdiction to review USCIS's referral decision; (3) USCIS correctly stopped the EAD clock after Plaintiff impeded adjudication of her asylum claim; and (4) 8 U.S.C. § 1158(d)(7) deprives Plaintiff of a private right of action to challenge USCIS's action in this case.

I.  **Standard of Review**

While some of the relief sought raises jurisdictional issues (like the request for an order to bar removal), Plaintiff primarily challenges USCIS's initial no-show designation immediately following her interview. This request for relief under the APA and Mandamus Act and the Government's arguments for dismissal are better addressed under Rule 12(b)(6). See Nulankeyutmonen Nkihtaqmikon v. Impson, 503 F.3d 18, 33 (1st Cir. 2007) (noting that, in the absence of statutory language suggesting that Congress intended exhaustion to be a prerequisite to federal court jurisdiction, "APA's finality

requirement is not jurisdictional in nature"); Comley v. Town of Rowley, 296 F. Supp. 3d 327, 331-32, 335-36 (D. Mass. 2017) (addressing whether the plaintiff has a private right of action under the Rule 12(b)(6) rubric).

In analyzing whether a complaint states a claim sufficient to satisfy Rule 12(b)(6), the Court must set aside any statements that are merely conclusory and examine only the pleader's factual allegations. See Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678.

## II. **8 U.S.C. § 1158(d)(7)**

The Government argues that 8 U.S.C. § 1158(d)(7) is a statutory bar to Plaintiff's cause of action. This provision, titled "No private right of action," provides that "[n]othing in this subsection [8 U.S.C. § 1158(d), which governs asylum procedures] shall be construed to create any substantive or procedural right or benefit that is legally enforceable by any party against the United States or its agencies or officers or any other person." Some courts have relied on this provision to

dismiss complaints seeking to compel USCIS to adjudicate asylum applications within 180 days and schedule asylum interviews within 45 days; both time limits are required by 8 U.S.C. § 1158(d)(5). See, e.g., L.M. v. Johnson, 150 F. Supp. 3d 202, 209 (E.D.N.Y. 2015).[2] Thus, to the extent Plaintiff is suing to force USCIS to grant her a new asylum interview or employment authorization, this statutory provision bars her claim.

Plaintiff backpedals in the relief she seeks by arguing § 1158(d)(7) does not apply because she is only seeking to eliminate a false statement in her records. By its terms, § 1158(d)(7) only bars claims seeking to enforce rights within 8 U.S.C. § 1158(d), which sets out certain procedures for adjudicating asylum applications. The subsection says nothing about what USCIS should do when an attorney interrupts an asylum interview or how the agency should designate applicants after their interview. Thus, this provision does not bar Plaintiff from challenging USCIS's decision to designate her a no show after her interview.

---

[2] One unpublished circuit opinion has come to this conclusion. See Vang v. Gonzales, 237 F. App'x 24, 31 (6th Cir. 2007). Another has read § 1158(d)(7) to bar an alien's suit challenging the adequacy of notice concerning the consequences of filing a frivolous asylum application, which is required by 8 U.S.C. § 1158(d)(4)(A). See Ivantchouk v. U.S. Attorney Gen., 417 F. App'x 918, 921-22 (11th Cir. 2011).

## III. The Administrative Procedure Act

The Government argues that the no-show designation was appropriate because Plaintiff's attorney did not allow her to answer threshold issues concerning eligibility. Plaintiff argues that the question asked for irrelevant, privileged information. The parties dispute whether Plaintiff's refusal to answer questions should have stopped the EAD clock.

The Court need not decide the lawfulness of USCIS's no-show designation because the APA bars review of this nonfinal agency action. The APA allows courts to review certain agency action and set the action aside if it finds it unlawful. See 5 U.S.C. § 706. Only "agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review." Id. § 704. Since no statute specifically permits review of USCIS's no-show designation, the Court may only review the designation if it constitutes final agency action.

To qualify as final, the action "must mark the consummation of the agency's decisionmaking process" and either determine rights or obligations or trigger legal consequences. U.S. Army Corps of Eng'rs v. Hawkes Co., 136 S. Ct. 1807, 1813 (2016) (quoting Bennett v. Spear, 520 U.S. 154, 177-78 (1997)). In other words, the action must "conclusively determine[] the rights and obligations of the parties with respect to the

10

matters at issue." Berkshire Envtl. Action Team, Inc. v. Tenn. Gas Pipeline Co., 851 F.3d 105, 111 (1st Cir. 2017) (quoting Rhode Island v. EPA, 378 F.3d 19, 23 (1st Cir. 2004)). The possibility of an agency appeal prevents a decision from being final when the decision automatically triggers further agency review according to statute or regulation. See Global Tower Assets, LLC v. Town of Rome, 810 F.3d 77, 86 (1st Cir. 2016).

The initial no-show designation is simply one step of the lengthy agency review of an affirmative asylum application. As described above, if USCIS designates an applicant a no show, she has 45 days to provide good cause for her absence. USCIS does not make a final decision on an applicant's failure to appear until the 45 days have expired. If she provides an excuse that USCIS accepts, USCIS will schedule a new interview. If USCIS rejects her excuse or she does not respond, the agency must refer her for removal proceedings if she appears removable. Before the immigration judge, the applicant may demonstrate good cause for her absence. If she can do so, the immigration judge will dismiss the proceedings and send her case back to USCIS. The initial no-show designation Plaintiff challenges here is therefore not the final decision that USCIS makes on her failure to appear for the interview, and even USCIS's ultimate decision automatically triggers another round of review in immigration court.

Plaintiff answers that the no-show designation governs USCIS's determination of eligibility for employment authorization, thus turning it into final agency action. While it is true that failure to appear for an asylum interview stops the applicant's 180-day EAD clock, if the applicant provides good cause for her failure to appear within 45 days, USCIS will restart her clock. If she does not, she still has another opportunity to restart her clock if she can convince the immigration judge to dismiss her removal proceedings based on good cause for refusing to answer the questions. Thus, the initial no-show designation is not the agency's final word on an applicant's eligibility for employment authorization either.

The parties have not cited any caselaw on whether USCIS's no-show designation, if contested, is reviewable as final agency action. Cf. Diallo v. Ashcroft, 381 F.3d 687, 701 (7th Cir. 2004) (declining to decide whether the appellate court had jurisdiction to review a due process challenge to USCIS's decision to designate the asylum applicant a no show). However, in other situations, courts have found that USCIS's decision to deny an adjustment of status application or terminate asylum are not reviewable final agency action as long as the alien was referred to immigration court for removal proceedings. See, e.g., Jama v. Dep't of Homeland Sec., 760 F.3d 490, 495-47 (6th Cir. 2014); Qureshi v. Holder, 663 F.3d 778, 781 (5th Cir.

2011); Cabaccang v. U.S. Citizenship & Immigration Servs., 627 F.3d 1313, 1316-17 (9th Cir. 2010). In such cases, USCIS's decision "automatically triggers another stage of decision-making" in the immigration court, rendering the decision nonfinal. Qureshi, 663 F.3d at 781. Similarly, the initial no-show designation Plaintiff challenges here automatically triggers another round of decisionmaking when USCIS provides 45 days to offer good cause for her failure to appear and then even another round when USCIS refers the case to immigration court.

That Plaintiff actually did appear for her interview in a physical sense does not change this analysis because she did not answer the questions at her interview. Plaintiff characterizes USCIS's no-show designation as falsification of government records. She certainly has a point that the no-show designation in this instance may be misleading. If an applicant shows up at a hearing but refuses to answer relevant, non-privileged questions on the advice of counsel, should she be deemed a no show? The regulations and Manual do not directly address this question. USCIS has explained that its computer system has a limited number of codes to record what occurred at an interview and that it has chosen to use the no-show designation for any time the interview cannot proceed due to the fault of the applicant. While the no-show designation is, on its face, false, on review, an immigration judge will have the opportunity to

determine whether a more accurate designation, such as "failure to answer questions without good cause," helps Plaintiff's situation. Regardless of the designation, her eligibility for employment authorization has not been finally adjudicated because the asylum office must issue a referral to the immigration court.[3] Plaintiff's avenue for challenging what she believes is an incorrect designation should now be in the immigration court. The APA does not permit this Court to circumvent this established agency process and review a nonfinal decision.

## IV. Mandamus

The Mandamus Act permits courts "to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. Mandamus is "an extraordinary writ reserved for special situations" when "the agency or official [has] acted (or failed to act) in disregard of a clear legal duty and . . . there [is] no adequate conventional means for review." In re City of Fall River, 470 F.3d 30, 32 (1st Cir. 2006). A court must determine whether a

---

[3] According to the Declaration of Meghann Boyle, the Director of the Boston Asylum Sub-Office at USCIS, after this case was argued, the agency determined that Plaintiff did not adequately respond to the 45-day notice to request a new interview. Her EAD clock is therefore stopped, and she is ineligible for employment authorization pending her removal proceedings before an immigration judge.

"conventional means" is adequate. Id. In the absence of a clear legal duty, mandamus relief is appropriate "only in the most egregious of cases." Morgovsky v. Dep't of Homeland Sec., 517 F. Supp. 2d 581, 584 (D. Mass. 2007) (finding that mandamus was not warranted where USCIS took sixteen months to decide an appeal of a denial of a naturalization application).

In light of the lack of breach of a clear legal duty in these circumstances, a writ of mandamus is not warranted. Neither the statute, regulations, nor Manual clearly demonstrate that USCIS acted improperly in designating Plaintiff a no show after her interview, during which she allegedly declined to answer certain questions that were not obviously privileged or irrelevant. She has also not shown circumstances egregious enough for a court to award mandamus relief in the absence of a clear legal duty.

## ORDER

Accordingly, the Court **ALLOWS** Defendants' motion to dismiss (Docket No. 20). Plaintiff's motion for a preliminary injunction (Docket No. 10) is **DENIED**. The Court orders that the Declaration of Meghann Boyle (Docket No. 30) be unsealed.

SO ORDERED.

/s/ PATTI B. SARIS
Patti B. Saris
Chief United States District Judge